Cole S. Cannon (12053)
Austin J. Hepworth (13238)
CANNON LAW GROUP, PLLC
53 S. 600 E.
Salt Lake City, Utah  84102
(801) 363-2999
cole@cannonlawgroup.com
austin@cannonlawgroup.com

*Attorneys for Plaintiffs*

---

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| KYLE BATEMAN; PAUL LAMBERT; BRUCE MILLER; TOM SAWYER; LAMBERT TECHNOLOGY INCORPORATED,  Utah Corporation; RANDALL B BATEMAN IRA; JOHN CURTIS; JEFF CROOK; PL WOOLSTENHULME FLP; SIBYL NOBLE; KIM BATEMAN; BATEMAN IP LAW GROUP, A PROFESSIONAL CORPORATION, a Utah Corporation; LOU ANN LAMBERT; JOE MARTEL; DAVID KNIGHT; SPENCER LAMBERT; ROBERT LAMBERT; BEN FREI; NELLY BATEMAN; TAZ MURRAY; and JASON SCHMID, <br><br>         Plaintiffs, <br><br> v. <br><br> JAB WIRELESS, INC., a Colorado Corporation, <br><br>         Defendant. | **COMPLAINT** <br><br> Civil No.: 2:14-cv-00147-EJF <br><br> Magistrate Judge: Evelyn J. Furse |

1

COMES NOW Kyle Bateman, Paul Lambert, Bruce Miller, Lambert Technology Incorporated, Tom Sawyer, Randall B Bateman IRA, John Curtis, Jeff Crook, PL Woolstenhulme FLP, Sibyl Noble, Kim Bateman, Bateman IP Law Group, a Professional Corporation, Lou Ann Lambert, Joe Martel, David Knight, Spencer Lambert, Robert Lambert, Ben Frei, Nelly Bateman, Taz Murray, and Jason Schmid, the Plaintiffs, by and through their counsel, and allege as follows in this Complaint:

## PARTIES

1. Kyle Bateman ("Bateman") is an individual that resides in and is a citizen of Utah and is a shareholder of JAB Wireless, Inc.

2. Paul Lambert ("Lambert") is an individual that resides in and is a citizen of Utah and is a shareholder of JAB Wireless, Inc.

3. Bruce Miller is an individual that resides in and is a citizen of Utah and is a shareholder of JAB Wireless, Inc.

4. Lambert Technology, Incorporated is a Utah corporation whose home office is located in Utah and who is a resident and a citizen of Utah and is a shareholder of JAB Wireless, Inc.

5. Tom Sawyer is an individual that resides in and is a citizen of Utah and is a shareholder of JAB Wireless, Inc.

6. Randall B Bateman IRA is an IRA held by Randall B Bateman in Utah and Randall B Bateman is a resident and citizen of Utah. Randall B Bateman IRA is a shareholder of JAB Wireless, Inc.

7. John Curtis is an individual that resides in and is a citizen of Utah and is a shareholder of

JAB Wireless, Inc.

8. Jeff Crook is an individual that resides in and is a citizen of the U.S. Virgin Islands and is a shareholder of JAB Wireless, Inc.

9. PL Woolstenhulme FLP is located in Utah, has a Utah trustee who is a resident and citizen of Utah, and is a shareholder of JAB Wireless, Inc.

10. Sibyl Noble is an individual that resides in and is a citizen of Utah and is a shareholder of JAB Wireless, Inc.

11. Kim Bateman is an individual that resides in and is a citizen of Utah and is a shareholder of JAB Wireless, Inc.

12. Bateman IP Law Group, a Professional Corporation is a Utah professional corporation whose home office is located in Utah and who is a citizen of Utah and is a shareholder of JAB Wireless, Inc.

13. Lou Ann Lambert is an individual that resides in and is a citizen of Utah and is a shareholder of JAB Wireless, Inc.

14. Joe Martel is an individual that resides in and is a citizen of Utah and is a shareholder of JAB Wireless, Inc.

15. David Knight is an individual that resides in and is a citizen of Arizona and is a shareholder of JAB Wireless, Inc.

16. Spencer Lambert is an individual that resides in and is a citizen of Utah and is a shareholder of JAB Wireless, Inc.

17. Robert Lambert is an individual that resides in and is a citizen of Utah and is a

shareholder of JAB Wireless, Inc.

18. Ben Frei is an individual that resides in and is a citizen of Utah and is a shareholder of JAB Wireless, Inc.

19. Nelly Bateman is an individual that resides in and is a citizen of Utah and is a shareholder of JAB Wireless, Inc.

20. Taz Murray is an individual that resides in and is a citizen of Utah and is a shareholder of JAB Wireless, Inc.

21. Jason Schmid is an individual that resides in and is a citizen of Idaho and is a shareholder of JAB Wireless, Inc.

22. JAB Wireless, Inc. ("JAB") is a Colorado corporation whose home office is located in Colorado and who is a citizen of the state of Colorado. JAB also conducts business in Utah.

## JURISDICTION AND VENUE

23. The matter in controversy in this action exceeds the sum or value of $75,000, exclusive of costs and interest, and is between citizens of different states.

24. Jurisdiction is proper pursuant to 28 U.S.C. §1332(a) and §1331.

25. Venue is proper pursuant to 28 U.S.C. §1391(b) as JAB conducts business in Utah and a substantial part of the events and omissions at issue took place in Utah.

## GENERAL ALLEGATIONS

26. On or about May 24, 2006, Defendant JAB entered into a Share Purchase Agreement (the "SPA") to purchase 51% of the outstanding interests in Digis, LLC ("Digis"), who is not a party to this action. Defendant JAB representatives involved in the SPA and associated transactions

included John S. Koo, John Hunt, Jeff Kohler, Vicki Barone, and Jim Vaughn. The SPA is attached as Exhibit A.

27. The SPA referred to the 51% interests as "the Class A Shares."

28. The remaining 49% interests in Digis were referred to as "the Class B Shares."

29. The Plaintiffs were holders of the interests in Digis represented by the Class B Shares.

30. Pursuant to the SPA, section 8.2, Defendant JAB had an obligation to purchase all of the assets of Digis upon demand from the Plaintiffs.

31. The Plaintiffs were and are the intended third party beneficiaries of the SPA.

32. The Plaintiffs sent their demand to purchase to Defendant JAB on or about February 26, 2008 ("Demand").

33. Pursuant to this Demand, Defendant JAB arranged for the purchase of the assets of Digis.

34. The purchase price to be paid to the Plaintiffs was based on the "Value of the Company" as defined in the SPA Exhibit A, and this purchase price was to be paid in cash and shares of JAB's common stock ("JAB Shares").

35. To determine the number of JAB Shares to issue to the Plaintiffs, section 8.5 of the SPA required that the JAB Shares be valued at the lower of $2.50/Share, the price of JAB Shares if an independent valuation was performed, or the "Adjusted JAB Share Price."

36. The Adjusted JAB Share Price was the price at which Defendant JAB sold any other JAB shares to any other parties during the period between signing the SPA and closing on the assets of Digis.

37. In other words, if Defendant JAB sold JAB Shares at a lower price than $2.50/share, then

Plaintiffs were to receive the number of JAB Shares related to that lower price.

38. Defendant JAB provided Plaintiffs with a disclosure memorandum dated March 20, 2009 to show many items related to the proposed transaction associated with the Demand ("Memorandum"). The Memorandum is attached as Exhibit B.

39. Defendant JAB closed on the assets of Digis on or about March 31, 2009, with Plaintiffs relying in good faith on Defendant JAB to comply with the SPA, as well as provide the information necessary to know the appropriate price per share.

40. Defendant JAB paid $1,618,000 in cash as well as 1,565,000 JAB Shares.

41. The Memorandum describes how the number of JAB Shares was determined when it answers the question of "How was the exchange ratio determined?" by stating that the 1,565,000 JAB Shares were "valued <u>in accordance with the provisions of the Purchase Agreement</u> at $2.50 per share." Memorandum pp. 2-3 (emphasis added).

42. Despite this representation, the Plaintiffs recently learned that around October or November of 2008, Defendant raised funds by providing, among other things, JAB Shares for $.01/share by way of warrants to purchase the JAB Shares.

43. Even though millions of JAB Shares were issued for $.01/share, Defendant JAB did not disclose this price and did not provide Plaintiffs with their JAB Shares at $.01/share, as required by the SPA.

44. Defendant JAB instead disclosed that "In November 2008, and included in the total warrant number above, JAB issued warrants to ABRY and KOO with a *nominal exercise price*, to purchase 3,879,245 shares of JAB's Common Stock, 300,792 shares of JAB's Series A

6

preferred stock, and 352,431 shares of JAB's Series B preferred stock which represents 16.99% of JAB's fully-diluted shares outstanding…" Memorandum p. 54 (emphasis added).

45. Paul Lambert, on behalf of all Plaintiffs, wanted to know the price of the shares, and as Defendant JAB had never disclosed the actual price, he questioned Jeff Kohler a Director of Defendant JAB, who led Paul Lambert to believe that such price was around $3.75 per JAB Share.

46. Other Plaintiffs also had this same understanding.

47. None of the Plaintiffs knew that Defendant had issued JAB Shares for less than $2.50/share.

48. Paul Lambert communicated to Defendant JAB that it was critical that no JAB Shares had ever been issued for less than $2.50/share or were expected to be issued for less than $2.50/share.

49. The Plaintiffs did not have access to the information regarding all prices at which the shares had been issued or were expected to be issued when Defendant JAB closed on the assets of Digis.

50. Defendant JAB's representatives, including, John S. Koo, John Hunt, Jeff Kohler, Vicki Barone, and Jim Vaughn, knew that Defendant JAB had sold shares/warrants for $.01/share because they were either a beneficiary of the deal, intimately involved with the deal, or on the board and approved the deal with ABRY where the shares were issued for $.01/share.

51. Defendant JAB's representatives, including, John S. Koo, John Hunt, Jeff Kohler, Vicki Barone, and Jim Vaughn, were either Directors on the board at JAB or officers of JAB at the

time of the merger and knew that the Plaintiffs were not provided with the lowest price for JAB Shares, as required by the SPA.

52. The Plaintiffs justifiably relied on Defendant JAB to disclose to them and to provide them with the lowest price for JAB Shares as provided in the SPA.

53. The Plaintiffs would not have allowed the closing to take place at $2.50/share if they had known the "Adjusted JAB Share Price" which was equal to the $.01 price per share received by others.

54. The Plaintiffs only recently discovered that Defendant JAB provided these JAB Shares for $.01/share.

55. Defendant JAB issued other warrants and disclosed the actual price per share associated with those warrants.

56. However, Defendant JAB did not disclose any actual share prices for warrants with a share price less than $2.50/share even though such shares were issued to Defendant JAB board members and ABRY. Instead, Defendant JAB referred to such price per shares as "nominal."

57. Defendant JAB also had the contractual obligation to adjust the Adjusted JAB Share Price proportionally when "JAB subdivides the JAB common stock, by split-up or otherwise, or issues additional shares of its Stock as a dividend…" SPA § 8.5(b) (emphasis added).

58. The warrants to purchase JAB Shares for $.01/share were granted in connection with issuance of Series C Preferred Shares which sold for $1,000/share.

59. The Series C Preferred Shares pay a 12.5% dividend each quarter, and are fully redeemable for $1,000/share plus accrued dividends at a liquidation event or six years after

8

issuance.

60. Payment on the Series C Preferred Shares is senior to the right of the holders of JAB Shares of common stock.

61. As the holders of the Series C Preferred Shares have the right to receive their entire investment back, plus 12.5% interest paid quarterly, the warrants to purchase JAB Shares at $.01/share were additional 'cream on the top' for the holders of the Series C Preferred Shares.

62. Under the terms of the most recently contemplated transaction to sell the company to a third party, the holders of the Series C Preferred Shares would have been given a combined return on investment in excess of 100% while the return on investment for the Plaintiffs over that same period would have been a 59% loss, giving back only 41% of their investment.

63. The portion of the return given to the holders of the Series C Preferred Shares that was 'cream on the top' would have been in excess of 1000%.

64. Pursuant to the SPA § 8.5(b), the warrants to purchase JAB Shares at $.01/share are appropriately classified as one or more of the following:

   a. As Defendant JAB selling shares at a price below $2.50;

   b. As Defendant JAB subdividing JAB common stock, as a price of $.01/share is basically the same as a price of $.00/share due to the fact that no real consideration is received for the additional shares issued; and/or

   c. As Defendant JAB issuing "its Stock as a dividend" to the holders of the Series C Preferred Shares.

65. Despite the provisions in the SPA, Defendant JAB did not make the required

adjustments or disclose the facts requiring such adjustments.

66. At all times, Plaintiffs justifiably relied on Defendant JAB to provide complete and accurate information.

67. Plaintiffs were required to retain attorneys to enforce their rights under the SPA.

## FIRST CLAIM FOR RELIEF
### Breach of Contract

68. Plaintiff hereby incorporates the preceding paragraphs as if fully set forth herein.

69. Based on consideration received, the SPA was executed by Defendant JAB.

70. In the SPA section 8.02, the Plaintiffs, as shareholders of Digis, were granted certain rights related to requiring Defendant JAB to purchase the assets of Digis.

71. Defendant JAB knew about these rights and agreed to these rights.

72. Pursuant to the SPA, the Plaintiffs filed their Demand on Defendant JAB requiring Defendant JAB to purchase according to the provisions in the SPA.

73. Defendant JAB recognized their right to file the Demand and commenced towards closing on Defendant JAB's purchase obligation.

74. Defendant JAB represented that it was following "the provisions of the Purchase Agreement [or SPA]…", Memorandum pp. 2-3, when it valued the JAB Shares at $2.50/share.

75. However, despite the representation, Defendant JAB did not follow the provisions of the SPA as the SPA required the price per share to be adjusted based on a price lower than $2.50/share for which others received shares ($.01/share), on stock splits, and on stock dividends.

76. Defendant JAB never disclosed the true price per share or made these adjustments.

77. As these adjustments were not made, Defendant JAB breached the SPA.

78. Plaintiffs did not have access to the necessary information to determine if Defendant JAB was complying with the SPA.

79. Plaintiffs had to rely, and justifiably did rely, on Defendant JAB and the representations of its agents to determine if the SPA was being followed.

80. Plaintiffs have been damaged as they did not receive the benefit of their bargain and because their interests in the JAB Shares were harmed due to others receiving priority and JAB Shares at $.01/share.

81. If Plaintiff were offered a conversion of its Digis shares at $0.01/share (as required by the Agreement) then Plaintiff would own 354,889,500 JAB Shares. Instead, Plaintiffs were given 1,419,558 JAB Shares.

82. At a minimum, the Plaintiffs were entitled to be offered the best price made available to other purchasers of the JAB Shares which benefit they have not heretofore received.

83. Wherefore, Plaintiffs are entitled to a judgment against Defendant such that their JAB Shares are increased and payment made to reconcile the conversion price to the best price offered to third parties (e.g. ABRY) during the relevant period, as well as other appropriate equitable relief. Which amount of shares and money will be established at trial but not less than $6,175,207.80, as well as interest and all costs and fees associated with maintaining this action.

## SECOND CLAIM FOR RELIEF
### Breach of Fiduciary Duty

84. Plaintiff hereby incorporates the preceding paragraphs as if fully set forth herein.

85. The warrants issued at $.01/share were issued to members of Defendant JAB's board of directors ("Directors").

86. The Directors knew that these warrants were issued at a price of $.01/share.

87. Some of the Directors could potentially receive over millions in dollars in profits from these warrants.

88. The Directors were in a position and under a duty to disclose this information to Plaintiffs.

89. Instead of disclosing the actual price per share, the Directors chose to use an ambiguous term of "nominal" to conceal the actual price.

90. As the Directors did not disclose the actual price, the Plaintiffs' asked what the actual price of the shares was set at, at which point it was conveyed to the representative that the price was approximately $3.75/share.

91. The Directors gave the Plaintiffs reassurance that JAB Shares had not and were not expected to be issued for less than $2.50/share.

92. The transaction that included Plaintiffs was classified by Defendant JAB as a merger, and Plaintiffs had to vote on the proposed merger.

93. To enable the Plaintiffs to have an informed vote on the details of the merger, Defendant JAB prepared and provided the Memorandum.

94. Defendant JAB knew and intended that Plaintiffs would rely on this Memorandum when making their decisions.

95. Despite this, Defendant JAB did not disclose sufficient details relating to the warrants to enable the Plaintiffs to make an informed decision.

96. Due to the fact that, among other things, the Directors could profit immensely from the warrants, the SPA imposed adjustment obligations on Defendant JAB related to the price of the JAB Shares, the Directors maintained special positions of knowledge, laws exist requiring a full and complete disclosure, the Plaintiffs had to rely on, and justifiably did rely on, and trust Defendant JAB to fully disclose all information, and the Directors were disclosing information to future shareholders of Defendant JAB, Defendant JAB and its Directors had a fiduciary duty to provide full, complete, and accurate information to the Plaintiffs.

97. Defendant JAB and the Directors did not provide full, complete and accurate information as they did not disclose the price of $.01/share.

98. This failure to disclose is a course of conduct by the Directors of self-dealing to the detriment of the Plaintiffs.

99. This failure to disclose was a breach of the fiduciary duty owed to the Plaintiffs.

100.     Plaintiffs were directly damaged by the failure to disclose all information.

101.     Wherefore, Plaintiffs are entitled to a judgment against Defendant in an amount of not less than $6,175,207.80, as well as other appropriate equitable relief, as well as interest and all costs and fees associated with maintaining this action.

### THIRD CLAIM FOR RELIEF
**Fraudulent Non-Disclosure**

102. Plaintiff hereby incorporates the preceding paragraphs as if fully set forth herein.

103. Defendant JAB knew that the Plaintiffs were entitled to the benefit of section 8.5(b) of the SPA.

104. Defendant JAB also knew that it had issued JAB Shares for $.01/share by way of issuing warrants to purchase those shares.

105. The warrants for $.01/share were issued just a few months prior to the closing pursuant to the Plaintiffs' Demand, and so Defendant JAB had sufficient time to disclose the details, and the transaction was within a close enough timeframe that the Directors and others involved would still have this price fresh in their memory.

106. For all warrants with share prices at or above $2.50/share, Defendant JAB disclosed the actual price per share in the Memorandum.

107. However, when it came to the warrants for $.01/share, Defendant JAB elected to use the word "nominal" to conceal the actual share price.

108. The word "nominal" is a word that can only be understood in context or in relation to what is being compared, as an additional $1,000 charge on a $1,000,000 transaction could be classified as a "nominal" charge, as could a $2.50 charge on a $1,000 transaction.

109. As the warrants were issued as an additional item in a transaction involving shares selling at $1,000/share, it was reasonable for the Plaintiffs to believe that a price of $3.75/share was a "nominal exercise price," especially since this understanding was also conveyed by

representatives of Defendant JAB.

110. Defendant JAB's election to treat the $.01/share warrants different from the other warrants evidences intent to keep information away from the Plaintiffs.

111. Defendant JAB and its representatives knew that the price per share was a material item for the Plaintiffs.

112. Defendant JAB and its representatives also knew that the Plaintiffs were entitled to receive the lowest price per share that was given to others.

113. Defendant JAB did not want to provide Plaintiffs with JAB Shares valued at $.01/share even though others were provided with JAB Shares at this price.

114. Upon information and belief, Defendant JAB intentionally omitted the actual price per share of the warrants.

115. Defendant JAB intended the Plaintiffs to rely on the disclosures made in the Memorandum as well as the representations made by its representatives.

116. Defendant JAB knew that the Plaintiffs would rely on the Memorandum as being a full, complete, and accurate disclosure.

117. The Plaintiffs did in fact justifiably rely on the Memorandum and the representations of Defendant JAB's representatives.

118. The Plaintiffs' reliance on Defendant JAB has caused harm and damage to the Plaintiffs.

119. The Plaintiffs' harm and damage is a direct result of Defendant JAB's omissions.

120. Wherefore, Plaintiffs are entitled to a judgment against Defendant in an amount of not

less than $6,175,207.80, as well as other appropriate equitable relief, as well as interest and all costs and fees associated with maintaining this action.

## FOURTH CLAIM FOR RELIEF
### Misrepresentation

121. Plaintiff hereby incorporates the preceding paragraphs as if fully set forth herein.

122. This claim is made in the alternative to the claim above in the event there is no finding of intent under the claim for relief above.

123. Defendant JAB omitted necessary details and made affirmative representations related to the proper price for the JAB Shares.

124. At a minimum, the omission, if not intentional, was due to Defendant JAB's negligence.

125. At a minimum, the affirmative representations from Defendant JAB's representatives related to the purchase price being around $3.75/share and the reassurance that JAB Shares had not and were not expected to be issued for less than $2.50/share were negligent.

126. Defendant JAB had a duty to provide Plaintiffs with full, complete, and accurate information.

127. Defendant JAB breached its standard of care by misrepresenting the actual price of the warrants and omitting the actual price of the warrants from the documents.

128. These misrepresentations directly caused the Plaintiffs harm and damaged the Plaintiffs.

129. Wherefore, Plaintiffs are entitled to a judgment against Defendant in an amount of not less than $6,175,207.80, as well as other appropriate equitable relief, as well as interest and other costs, including filing fees, as well as interest and all costs and fees associated with maintaining

this action.

### FIFTH CLAIM FOR RELIEF
**Breach of Covenant of Good Faith and Fair Dealing**

130. Plaintiff hereby incorporates the preceding paragraphs as if fully set forth herein.

131. Pursuant to section 8.5 of the SPA, the JAB Share price was to be based on the Adjusted JAB Share Price.

132. Based on the lack of access to information, Plaintiffs had to rely on Defendant JAB to furnish accurate information.

133. Every written contract has an implied covenant of good faith and fair dealing obligating the parties to act within the reasonable expectations of the other party.

134. Pursuant to the SPA, the Plaintiffs reasonably expected Defendant JAB to provide the necessary information and for Defendant JAB to comply with the SPA.

135. When Defendant JAB agreed to section 8.5 of the SPA, Defendant JAB agreed, among other things, to provide the information necessary to Plaintiffs to know that Defendant JAB had fulfilled the requirements of the Adjusted JAB Share Price.

136. Defendant JAB opted instead to cloak the real price of the warrants under the term "nominal" and to mislead Plaintiffs on the meaning of the term "nominal."

137. These actions violated the reasonable expectations of the Plaintiffs and violated the implied covenant of good faith and fair dealing.

138. This violation of the covenant of good faith and fair dealing directly damaged the Plaintiffs.

139. Wherefore, Plaintiffs are entitled to a judgment against Defendant in an amount of not less than $6,175,207.80, as well as other appropriate equitable relief, as well as interest and all costs and fees associated with maintaining this action.

## SIXTH CLAIM FOR RELIEF
**Federal Securities and Exchange Act Violations**

140. Plaintiff hereby incorporates the preceding paragraphs as if fully set forth herein.

141. Defendant JAB sold securities to the Plaintiffs through unregistered offers and sales of securities.

142. These actions affected interstate commerce and violated various sections of the 1933 Securities and Exchange Act of 1933, various sections, including Section 10(B), of the Securities and Exchange Act of 1934, and various SEC regulations, including SEC Rule 10b-5, promulgated thereunder.

143. Defendant JAB and its officers made specific misrepresentations of material fact and material omissions of fact as described in the preceding paragraphs including, but not limited to, the following:

    a. Conveying to Plaintiffs' representative that ABRY's valuation of the stock was around $3.75/share; and

    b. Stating that the warrant price on the stock was "nominal" instead of disclosing the actual price of $.01/share; and

    c. The other representations and omissions outlined above.

144. Defendant JAB, through its officers, acted knowingly, with scienter, and recklessly, by making the misrepresentations and material omissions identified in the preceding paragraphs of this Complaint.

145. Defendant JAB made these misrepresentations and withheld material information in order to induce Plaintiffs to accept shares at a $2.50/share valuation instead of the $.01/share valuation they were entitled to receive.

146. Plaintiffs reasonably relied upon the material misrepresentations and omissions in receiving the shares at the contractual price which was an amount equal to the lesser of 1) the lowest price sold to third-parties between 2006 and 2009 or, 2) $2.50/share.

147. Plaintiffs have been injured and continue to be injured and suffer economic loss as a direct result of the material misrepresentation and omissions described herein.

148. Plaintiffs would not have suffered such losses but for the material misrepresentations and omissions, the devises, schemes and artifices, and the fraudulent and deceitful transactions and practices of Defendant JAB.

149. As a direct result of Defendant's violations of these acts, Plaintiff has suffered damages in an amount to be determined at trial, but in no event less than $6,175,207.80, plus interest, costs, and attorneys' fees.

150. Wherefore, Plaintiffs are entitled to a judgment against Defendant in an amount of not less than $6,175,207.80, as well as other appropriate equitable relief, as well as interest and all costs and fees associated with maintaining this action.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs pray this Court for judgment against Defendant as follows:

151. For judgment against Defendant in an amount of at least $6,175,207.80.

152. For equitable relief as may be appropriate.

153. For the attorney fees, in an amount to be established by affidavit, incurred by Plaintiffs in bringing this action against Defendant.

154. For the court costs, service fees, and other expenses necessary to bring this action against Defendant.

155. For pre-judgment and post-judgment interest.

156. For reasonable costs incurred by Plaintiffs to collect the judgment.

157. For all other relief as this Court deems just and equitable under the circumstances.

DATED this 28th day of February, 2014.

|  |  |
|---|---|
| Plaintiffs' Address | /s/ Cole S. Cannon |
| 53 S. 600 East | Cole S. Cannon, Esq. |
| Salt Lake City, UT 84102 | Austin J. Hepworth, Esq. |
|  | *Attorneys for Plaintiff* |