IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| KYLE BATEMAN, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>JAB WIRELESS,<br><br>    Defendant. | **MEMORANDUM DECISION<br>AND ORDER**<br><br>Case No. 2:14-cv-147-RJS<br><br>Judge Robert J. Shelby |

Plaintiffs are a group of former shareholders in Digis, LLC that includes individuals, corporations, a law firm, an LLC, and an individual retirement account. Digis merged with Defendant JAB Wireless in 2006. Plaintiffs allege that, during the course of the merger, JAB Wireless breached the parties' Share Purchase Agreement and made material misrepresentations and omissions that resulted in Digis receiving less consideration than warranted under the contract.

JAB Wireless moves to dismiss Plaintiffs' Second Amended Complaint, arguing that Plaintiffs have failed to assert viable causes of action. The court first offers a brief background, drawing on and assuming the truth of the factual allegations in Plaintiffs' Second Amended Complaint, and then analyzes JAB Wireless's arguments.

## BACKGROUND[1]

In 2006, JAB Wireless and Digis entered into a Share Purchase Agreement. The contract required JAB Wireless to acquire Digis in a two-part transaction. First, JAB Wireless was obligated to purchase a 51% interest in Digis. JAB Wireless did so, and held the 51% interest in

---

[1] At the motion-to-dismiss stage, the court assumes the truth of Plaintiffs' well-pled factual allegations.

Class A Digis shares.  Plaintiffs held the remaining 49% interest in Class B Digis shares.  Second, JAB Wireless was obligated to purchase Plaintiffs' remaining 49% interest in Digis upon Plaintiffs' demand.

In February 2008, Plaintiffs made their demand that JAB Wireless complete the second phase of the purchase.  Pursuant to the Share Purchase Agreement, JAB Wireless was required to purchase the remaining 49% interest in Digis based on the value of the company, which was calculated to be $5,530,500.  JAB Wireless paid a portion of the purchase price with cash in the amount of $1,618,000.  JAB Wireless was to pay the remaining portion—$3,912,500—by issuing shares of its own stock to Plaintiffs.  In other words, Plaintiffs were to receive JAB Wireless shares valued at $3,912,500 in total.

To determine how many shares to issue, the parties first needed to determine the value of the JAB Wireless shares.  The Share Purchase Agreement provided that the shares of JAB Wireless's common stock would be valued at the lower of $2.50 per share or any price lower than $2.50 at which JAB Wireless sold any shares to a third party in the time period between the execution of the Share Purchase Agreement and the acquisition of the remaining 49% interest.  The lower the per-share price, the more shares would be issued to pay for the remaining portion of the purchase price ($3,912,500).  For example, if JAB Wireless issued shares to a third party for $2.00 per share, the shares issued to Plaintiffs in connection with the purchase of their remaining 49% interest in Digis would be valued at $2.00 per share rather than $2.50 per share, meaning Plaintiffs would receive more JAB Wireless shares.

In September 2007, JAB Wireless circulated a draft disclosure memorandum containing information related to the acquisition of the 49% interest.  Between September 2007 and March 2009, Plaintiffs received at least seven different drafts of the memorandum.  Plaintiffs made their

formal demand for JAB Wireless to purchase the remaining 49% Digis interest in February 2008 based on the information in the September 2007 disclosure memorandum. Over a year later, in March 2009, JAB Wireless acquired Plaintiffs' 49% Digis interest.

Plaintiffs allege that JAB Wireless issued shares of its stock to third parties for less than $2.50 per share after Plaintiffs made their demand but before the acquisition was final (i.e., between February 2008 and March 2009). In November 2008, JAB Wireless issued 14,000 shares of its Series C preferred stock to ABRY (a private equity investment firm) and John Koo (JAB Wireless's chief operating officer). Plaintiffs allege that ABRY and Mr. Koo acquired the shares for less than $2.50 per share. Plaintiffs also allege that JAB Wireless concealed and made misrepresentations concerning the ABRY-Koo per-share price.

After the ABRY-Koo transaction, Paul Lambert (a Digis shareholder) began communicating with JAB Wireless about the share price. Mr. Lambert spoke with Jeff Kohler (a founder and board member of JAB Wireless), who represented that the ABRY-Koo shares were valued at $3.50 to $3.75 per share. Mr. Kohler also used the term "nominal" to describe the price of the ABRY-Koo shares. Plaintiffs allege that Mr. Kohler led Mr. Lambert to believe that ABRY and Mr. Koo paid at least $3.50 per share, plus a nominal fee. Mr. Lambert also communicated with Jim Vaughn (the CEO and Chairman of the JAB Wireless Board of Directors), who stated that no shares had been issued to a third party for less than $2.50 per share.

The communications between Mr. Lambert and JAB Wireless employees occurred between November 2008 and March 2009. On March 20, 2009, JAB Wireless provided Plaintiffs with an updated disclosure memorandum. The memorandum stated that JAB Wireless had issued warrants to ABRY and Mr. Koo for "a nominal exercise price" and that ABRY and

Mr. Koo "have the opportunity to acquire a substantial percentage of JAB's Common Stock by paying only nominal additional consideration." Plaintiffs allege that, based on their previous communications with JAB Wireless employees, they understood that the term "nominal" "referred to a value of greater than $2.50/share." The memorandum also confirmed that the price of the shares issued to Plaintiffs would be calculated in accordance with the Share Purchase Agreement (the lesser of $2.50 or any lower price at which shares were issued to a third party between the execution of the Share Purchase Agreement and the March 2009 acquisition). Plaintiffs do not allege that they further investigated the per-share price after receiving the disclosure memorandum. On March 31, 2009, the transaction closed and JAB Wireless acquired the remaining Digis shares.

  Plaintiffs allege that they received JAB Wireless shares valued at $2.50 per share, even though JAB Wireless issued shares for less than $2.50 per share to ABRY and Mr. Koo. Plaintiffs claim that they were entitled to more JAB Wireless shares than they received based on a lower per-share price. ABRY eventually sold millions of shares to a third party, which generated a profit of at least $1.755 per share. Plaintiffs aver that they did not discover that ABRY and Mr. Koo received shares for less than $2.50 per share until October 2013, when JAB Wireless circulated shareholder payout calculations in advance of a potential merger. After further investigation between October 2013 and February 2014, Plaintiffs sued JAB Wireless. In their Second Amended Complaint, Plaintiffs bring several causes of action: breach of contract, breach of fiduciary duty, fraudulent nondisclosure, misrepresentation, breach of covenant of good faith and fair dealing, and violation of federal securities laws.

ANALYSIS

I. **Legal Standard**

To survive a 12(b)(6) motion to dismiss, a plaintiff must "state a claim upon which relief can be granted,"[2] meaning the complaint must allege "enough factual matter, taken as true, to make his 'claim to relief . . . plausible on its face.'"[3] The court "accept[s] all well-pleaded facts as true and view[s] them in the light most favorable to the plaintiff,"[4] but will not accept as true "legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements."[5]

II. **Contract Claims**

JAB Wireless argues that Plaintiffs' breach of contract claim is barred by novation. Novation has four requirements: "(1) a previous valid contract; (2) agreement between the parties to abide by the new contract; (3) a valid new contract; and (4) extinguishment of the old contract by substitution of the new one."[6]

When the parties closed their transaction pursuant to the Share Purchase Agreement, they entered into a Merger Agreement. The Merger Agreement contained an integration clause:

> (k) Entire Agreement. This Agreement, together with all exhibits and schedules hereto, constitutes the entire agreement and understanding of the parties with respect to the subject matter hereof and supersedes any and all prior negotiations, correspondence, agreements, understandings duties or obligations between the parties with respect to the subject matter hereof.

JAB Wireless contends that the Merger Agreement was an independent, enforceable contract that extinguished the parties' obligations under the Share Purchase Agreement. This may be so.

---

[2] Fed. R. Civ. P. 12(b)(6).
[3] *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).
[4] *Jordan-Arapahoe, LLP v. Bd. Of Cnty. Comm'rs*, 633 F.3d 1022, 1025 (10th Cir. 2011) (quoting *Beedle v. Wilson*, 422 F.3d 1059, 1063 (10th Cir. 2005)).
[5] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).
[6] *Phoenix Power Partners, L.P. v. Colo. Pub. Utilities Comm'n*, 952 P.2d 359, 364 (Colo. 1998).

However, on a Rule 12(b)(6) motion, the court is generally limited to the factual allegations in the complaint.[7]  JAB Wireless urges the court to dismiss the contract claims at the pleading stage based on the integration clause in the Merger Agreement, a document that is not mentioned in the Second Amended Complaint.  What's more, JAB Wireless has neither moved for summary judgment under Rule 56 nor asked the court to convert its Rule 12(b)(6) motion to a Rule 56 motion.[8]  Also, Plaintiffs have not had a reasonable opportunity to present rebuttal evidence, as Rule 12(d) requires.[9]  In view of the Rule 12(b)(6) standard, the court will not reach the novation issue unless or until the Merger Agreement is presented as part of the factual record in a manner that affords Plaintiffs a meaningful opportunity to respond.

      The court notes that Plaintiffs attached a draft of the Merger Agreement to their Second Amended Complaint.  The draft Merger Agreement contains an identical integration provision as the signed copy that JAB Wireless submitted with its papers.  Courts often consider certain documents outside the pleadings at this stage, including "matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned."[10]  Here, the court declines to consider the draft Merger Agreement because it is not the final, fully executed copy.  Further, the document is an exhibit to an exhibit (i.e., the disclosure memorandum), and is not mentioned in the Second Amended Complaint.  It is not the subject of any of Plaintiffs' claims, and it does not appear that Plaintiffs intended to incorporate the document into their pleading.

---

[7] *See* Fed. R. Civ. P. 12(d).
[8] *See id.*
[9] Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.").
[10] 5B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1357 (3d ed. 2004).

Along with its novation defense, JAB Wireless moves to dismiss the contract claims on two additional grounds.  First, JAB Wireless contends that the contract claims are untimely and therefore barred by the statute of limitations.  This argument rests, at least in part, on a choice-of-law provision in the Share Purchase Agreement, which JAB Wireless contends implicates Colorado statutes of limitations.  Second, JAB Wireless argues that the breach of contract and breach of implied covenant claims are duplicative under Colorado law.  There are factual questions surrounding JAB Wireless's novation argument that bear on the validity and enforceability of the Share Purchase Agreement and its choice-of-law provision.  Therefore, the court declines to evaluate JAB Wireless's statute-of-limitations and duplicative-claims defenses without first ensuring that, based on the factual record, the Share Purchase Agreement remains a binding contract.

### III. Breach of Fiduciary Duty

JAB Wireless argues that Plaintiffs' claim for breach of fiduciary duty cannot stand because a corporation does not owe a fiduciary duty to its shareholders.  Plaintiffs contend such a duty exists in Utah law, and that Colorado law should similarly apply.[11]

The burden here rests with Plaintiffs to show that they have stated a cognizable claim.[12]  Yet, they have directed the court to no Utah or Colorado authority recognizing a fiduciary relationship between a corporation and its shareholders.  Plaintiffs assert that the Utah Court of Appeals recognized such a duty in *Bingham Consolidation Co. v. Groesbeck*.[13]  However, the corporation's duty in that case arose from its status as a majority shareholder in a different

---

[11] To the extent Plaintiffs request leave, in their Memorandum in Opposition to Defendant's Motion to Dismiss, to amend their complaint to name individual directors of JAB Wireless as parties, Local Rule 7-1(b)(1)(A) states, "No motion . . . may be included in a response or reply memorandum.  Such motions must be made in a separate document."

[12] Fed. R. Civ. P. 12(b)(6); *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[13] 105 P.3d 365 (Utah Ct. App. 2004).

corporation.[14]  The existence of a fiduciary relationship between a majority shareholder and minority shareholders is not a remarkable proposition.[15]  And it is not the same thing as a fiduciary relationship between a corporation and its own shareholders.

Other courts have considered and rejected the position urged by Plaintiffs.  For example, the Sixth Circuit has held:

> Liability for breach of the directors' fiduciary obligation could not possibly run against the corporation itself, for this would create the absurdity of satisfying the shareholders' claims against the directors from the corporation, which is owned by the shareholders. There is not, and could not conceptually be any authority that a corporation as an entity has a fiduciary duty to its shareholders.[16]

Similarly, the Fourth Circuit noted that it "doubts that a shareholder can maintain an action for breach of fiduciary duty directly against the corporation itself."[17]

In the absence of controlling authority, the court declines to recognize a fiduciary relationship between Plaintiffs and JAB Wireless under Colorado or Utah law.[18]  Plaintiffs have failed to state a cognizable fiduciary duty claim and it is therefore dismissed.[19]

## IV.  State Statute of Limitations

JAB Wireless contends that the statute of limitations bars Plaintiffs' contract, breach of fiduciary duty claims, and fraud claims.  As stated, the court declines to reach the contract

---

[14] *Id.* at 371.

[15] *See id.*; *McMullin v. Beran*, 765 A.2d 910, 920 (Del. 2000); *Van Schaack Holdings, Ltd. v. Van Schaack*, 867 P.2d 892, 897–99 (Colo. 1994); *Nash v. Craigco, Inc.*, 585 P.2d 775, 776 (Utah 1978).

[16] *Radol v. Thomas*, 772 F.2d 244, 258 (6th Cir. 1985).

[17] *Schupp v. Jump! Information Techs.*, 65 F. App'x 450, 454 (4th Cir. 2003); *see also Johnston v. Wilbourn*, 760 F. Supp. 578, 590 (S.D. Miss. 1991) ("It is well established that a corporation owes no fiduciary duty to its shareholders nor can it be held vicariously liable for the alleged breaches of its officers and directors."); *Onex Food Servs., Inc. v. Grieser*, No. 93 CIV. 0278 (DC), 1996 WL 103975, at *7 (S.D.N.Y. Mar. 11, 1996); *Burcham v. Unison Bancorp, Inc.*, 77 P.3d 130, 147 (Kan. 2003).

[18] *Cf. Taylor v. Phelan*, 9 F.3d 882, 887 (10th Cir. 1993) ("As a federal court, we are generally reticent to expand state law without clear guidance from its highest court . . . .").

[19] At the hearing on the motion, Plaintiffs asserted for the first time that their claim is against JAB Wireless as a majority shareholder of Digis.  This argument is untimely and unsupported by the Second Amended Complaint and Plaintiffs' briefing.  Further, JAB Wireless did not have a meaningful opportunity to respond to the argument.  To determine whether a plaintiff has stated a cognizable claim, the court construes the plaintiff's complaint—not eleventh-hour recharacterizations of the complaint.

choice-of-law issue (including determination of the applicable statute of limitations) before determining whether the Share Purchase Agreement is valid. Also, the breach of fiduciary duty claim fails for the independent reasons stated above. That leaves the court to address the question whether Plaintiffs' common law fraud claim is untimely as a matter of law.

Generally, Utah statutes of limitations govern Utah lawsuits.[20] The exception to this rule is found in Utah's borrowing statute, codified at Utah Code § 78B-2-103, which states, "A cause of action which arises in another jurisdiction, and which is not actionable in the other jurisdiction by reason of the lapse of time, may not be pursued in this state, unless the cause of action is held by a citizen of this state who has held the cause of action from the time it accrued."[21]

The parties have not squarely briefed the issue of which state's statute of limitations applies to the fraud claim in view of Utah's borrowing statute. Regardless of which statute applies, the court cannot determine the applicability of either state's statute of limitations in the absence of a factual record. Both Colorado and Utah have a three-year statute of limitations for fraud.[22] In Colorado, a fraud claim does not accrue until the "deceit is discovered or should have been discovered by the exercise of reasonable diligence."[23] In Utah, a fraud claim does not accrue until "discovery by the aggrieved party of the facts constituting fraud or mistake."[24] Further, discovery occurs in Utah when the plaintiff obtains actual knowledge of the fraud or when "by reasonable diligence and inquiry [the plaintiff] should know the relevant facts of the fraud perpetrated against [the plaintiff]."[25]

---

[20] *Fin. Bancorp, Inc. v. Pingree & Dahle, Inc.*, 880 P.2d 14, 16 (Utah Ct. App. 1994). Even assuming the Share Purchase Agreement were valid, the fraud claims are separate from the contract claims for purposes of the statute of limitations, and therefore are not subject to the choice-of-law provision in the Share Purchase Agreement.
[21] U.C.A. § 78B-2-103.
[22] C.R.S. § 13-80-101(c); U.C.A. § 78B-2-305(3).
[23] C.R.S. § 13-80-108(3).
[24] U.C.A. § 78B-2-305(3).
[25] *Colosimo v. Roman Catholic Bishop*, 156 P.3d 806, 811 (Utah 2007) (citation and internal quotation marks omitted); *see also Russell Packard Dev., Inc. v. Carson*, 108 P.3d 741, 746 (Utah 2005).

The court previously dismissed Plaintiffs' First Amended Complaint without prejudice because Plaintiffs failed to allege any facts that demonstrated Plaintiffs made any meaningful investigation after receiving the March 20, 2009 disclosure memorandum, which disclosed that JAB Wireless had issued shares to third parties for a "nominal exercise price." In their Second Amended Complaint, Plaintiffs still do not allege that they investigated the meaning of "nominal exercise price" after receiving the disclosure memorandum and before finalizing the purchase of the remaining 49% interest in Digis (i.e., between March 20, 2009 and March 31, 2009). However, Plaintiffs added a number of allegations concerning Mr. Lambert's communications with JAB Wireless representatives prior to receiving the disclosure memorandum. Plaintiffs allege that Mr. Lambert asked about the "nominal" price and that Mr. Kohler led him to believe that JAB Wireless issued shares for at least $3.50 per share, plus a nominal fee. In other words, Mr. Lambert understood, based on JAB Wireless's representations, that the nominal fee was in addition to the $3.50 per-share price. Plaintiffs argue that they had no reason to further investigate the term "nominal" in the disclosure memorandum because they had already thoroughly investigated the term's meaning in discussions with JAB Wireless after receiving earlier drafts of the disclosure memorandum.

All said, the application of both states' discovery rules turns on questions of undeveloped facts. In the absence of a factual record, the court cannot determine at this stage whether the discovery rule applies.

## VI. Federal Securities Laws

### A. Statute of Limitations

Plaintiffs allege that JAB Wireless violated Section 10(b) of the Securities and Exchange Act of 1934 and SEC Rule 10b-5. The statute of limitations applying to those provisions,

codified at 28 U.S.C. § 1658, limits actions to the earlier of two years after "discovery of facts constituting the violation" or five years after the violation occurred.[26] JAB Wireless contends that Plaintiffs' claim falls outside the two-year period. "[T]he limitations period does not begin to run until the plaintiff thereafter discovers or a reasonably diligent plaintiff would have discovered 'the facts constituting the violation,' including scienter—irrespective of whether the actual plaintiff undertook a reasonably diligent investigation."[27] Like the state statutes of limitations, the federal statute depends on questions of fact that are not often suited to address at the motion-to-dismiss stage.[28] Plaintiffs allege that they investigated the meaning of "nominal" before receiving the disclosure memorandum and did not believe it was necessary to conduct further investigation based on the prior representations from JAB Wireless employees. Without clear and undisputed facts, the court cannot determine at this stage whether Plaintiffs conducted a reasonably diligent investigation.

### B. PSLRA Pleading Standard

To prove a claim under Section 10(b) and Rule 10b-5, a plaintiff must prove that the defendant:

> (1) made a material misrepresentation or omission; (2) with scienter; (3) in connection with the purchase or sale of a security; (4) upon which the plaintiff relied; (5) that the plaintiff suffered an economic loss; and (6) that the material misrepresentation was the cause of that loss.[29]

A plaintiff also must meet the pleading standard set out in the Private Securities Litigation Reform Act (PSLRA), which requires a plaintiff to (1) specify in the complaint "each statement

---

[26] 28 U.S.C. § 1658(b)(1)–(2).
[27] *Merck & Co. v. Reynolds*, 559 U.S. 633, 653 (2010).
[28] *See Fogle v. Slack*, 419 F. App'x 860, 865 (10th Cir. 2011); *Decker v. Korth*, 219 F.2d 732, 740 (10th Cir. 1955); *Hamilton v. District of Columbia*, 852 F. Supp. 2d 139, 146 (D.D.C. 2012); *In re Global Crossing, Ltd. Sec. Litig.*, 313 F. Supp. 2d 189, 204 (S.D.N.Y. 2003).
[29] *In re Williams Sec. Litig.–WCG Subclass*, 558 F.3d 1130, 1136 (10th Cir. 2009) (citing *Stoneridge Inv. Partners, LLC v. Scientific–Atlanta, Inc.*, 552 U.S. 148, 156 (2008)).

11

alleged to have been misleading, the reason or reasons why the statement is misleading"[30] and (2) "state with particularity [in the complaint] facts giving rise to a strong inference that the defendant acted with the required state of mind."[31]

JAB Wireless contends that Plaintiffs have failed to meet the PSLRA pleading standard. The court disagrees. First, Plaintiffs allege that Mr. Kohler told Mr. Lambert that the ABRY-Koo price per share was at least $3.50. Also, Plaintiffs allege that Mr. Vaughn assured Mr. Lambert that JAB Wireless did not issue any shares to third parties for less than $2.50 per share. Plaintiffs allege that these statements were false because the ABRY-Koo price per share was below $2.50. Second, Plaintiffs have alleged with particularity facts that give rise to a strong inference of scienter. Scienter means "a mental state embracing intent to deceive, manipulate, or defraud."[32] Further, "[t]o qualify as 'strong' . . . , an inference of scienter must be more than merely plausible or reasonable—it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent."[33] Plaintiffs allege that JAB Wireless representatives made misstatements about share prices on multiple occasions. Put simply, Plaintiffs allege that Mr. Kohler and Mr. Vaughn lied about a discrete, material fact. Plaintiffs additionally allege that JAB Wireless representatives made multiple misrepresentations to induce Plaintiffs to stop investigating the share price and to accept the $2.50 valuation. Based on Plaintiffs' well-pled allegations, the inference of scienter is at least as strong as the opposite inference that both Mr. Kohler and Mr. Vaughn were simply mistaken or misspoke on several occasions. Thus, Plaintiffs' securities-fraud claim meets the PSLRA pleading standard.

---

[30] 15 U.S.C. § 78u-4(b)(1)(B).
[31] *Id.* at § 78u-4(b)(2)(A).
[32] *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 218 n.12 (1976).
[33] *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 314 (2007).

## CONCLUSION

For the reasons stated, the court GRANTS IN PART AND DENIES IN PART JAB Wireless's Motion to Dismiss (Dkt. 38). Plaintiffs' breach of fiduciary duty claim is DISMISSED WITH PREJUDICE.

SO ORDERED this 6th day of July, 2015.

BY THE COURT:

ROBERT J. SHELBY
United States District Judge